## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **ISSAM ABDALLAH**, and **ABDERRAOUF ALKHAWALDEH**,<br><br>    Plaintiffs,<br><br>v.<br><br>**AMERICAN AIRLINES GROUP INC.**, a Delaware domestic corporation; and,<br><br>**MESA AIR GROUP, INC.**; a Nevada domestic corporation;<br><br>    Defendants. | **Case No.: 4:21-cv-540**<br><br>**COMPLAINT AND JURY DEMAND** |

## <u>COMPLAINT</u>

Plaintiffs Issam Abdallah and Abderraouf Alkhawaldeh, by and through their attorneys **CAIR Legal Defense Fund ("CAIR")**, bring this action against **AMERICAN AIRLINES GROUP INC.** and **MESA AIR GROUP, INC.**, for compensatory and punitive damages, declaratory and injunctive relief, pre-judgement and post-judgement interest, costs and attorneys' fees for violations of in violation of 42 U.S.C. § 1981 ("Section 1981") and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI"), and further state as follows:

### <u>Jurisdiction and Venue</u>

1.      Plaintiff's claims for discrimination on the basis of race and national origin are brought pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d and 42 U.S.C. § 1981.

2.      Jurisdiction is proper pursuant to 28 U.S.C. §1331, 42 U.S.C. §1981 and

1

federal common law.

3.    Venue is proper under 28 U.S.C. § 1391 as to Defendants because Defendants operate within the geographical boundaries of this district.

4.    This Court has personal jurisdiction over Defendants because Defendants reside and conduct business in this judicial district.

5.    This action seeks declaratory and permanent injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure, 42 U.S.C. § 2000d, 42 U.S.C. § 1981 and pursuant to the general, legal and equitable powers of this Court.

6.    Plaintiffs' claims for attorneys' fees and costs are predicated upon 42 U.S.C. § 2000d, 42 U.S.C. § 1988, 28 U.S.C. § 1343, and Fed. R. Civ. P. 54.

## Parties

7.    Plaintiff Issam Abdallah is a Muslim, Arab, and Middle Eastern man of Egyptian national origin, and a citizen and resident of Texas. Plaintiff Abdallah regularly travels with American Airlines for business and leisure purposes.

8.    Plaintiff Abderraouf Alkhawaldeh is a Muslim, Arab, and Middle Eastern man of Jordanian national origin, and a citizen and resident of Texas. Plaintiff Alkhawaldeh regularly travels with American Airlines for business and leisure purposes.

9.    Defendant American Airlines Group Inc. is a Delaware domestic corporation (#931981) ("Defendant American Airlines"), with its headquarters and principal place of business located at 1 Skyview Drive, Fort Worth, TX 76155.  Upon information and belief, Defendant American Airlines has received more than $82.6 Billion in federal subsidies. Defendant American Airlines regularly and systematically conducts business in the State of Texas, within this district.

10.    Defendant Mesa Air Group, Inc. is a Nevada domestic corporation

2

(#C11753-1996) (Defendant "Mesa"), with its headquarters and principal place of business located at Suite 700 at 410 North 44th Street, Phoenix, AZ, 85008 and a registered office located at 350 N. St. Paul Street, Dallas, TX 75201. Upon information and belief, Defendant Mesa has received more than $51.6 Billion in federal subsidies.  Defendant Mesa regularly and systematically conducts business in the State of Texas, within this district. Defendant operated the aircraft from which Plaintiffs were removed.

## Factual Background

11.     As a frequent traveler of American Airlines, Plaintiff Abdallah was awarded Gold member status by the airline.  He regularly travels with American Airlines for both business and leisure purposes. He is a pillar of the Muslim community in the Dallas-Fort Worth area and beyond.

12.     Also a frequent traveler of American Airlines, Plaintiff Alkhawaldeh was awarded Executive Platinum status by the airline.  He regularly travels with American Airlines for both business and leisure purposes. He is a leader, motivational speaker, and a pillar of the Muslim community in the Dallas-Fort Worth area and beyond.

13.     On September 14, 2019, Plaintiffs were returning from a community event in Birmingham, Alabama. Plaintiffs had purchased valid tickets from Birmingham to Dallas-Fort Worth and were scheduled to depart at 9:30 am on American Airlines Flight 5886 from Birmingham-Shuttlesworth International Airport (BHM) to Dallas/Fort Worth International Airport (DFW).

14.     Plaintiffs arrived at BHM on September 14, 2019 and presented their tickets and identification documents to American Airlines personnel. Plaintiffs went through security without issue.

15.     When the time came to board the aircraft, Plaintiffs boarded Flight 5886 without

issue. They were properly seated, and they abided by all the rules and laws of aircraft security.

16.     Plaintiffs were, at all times, in full compliance with Defendants' policies and procedures.  Plaintiffs behaved appropriately and respectfully, dressed appropriately, and did not threaten the safety of the flight in any way.

17.     Upon boarding the flight, Mr. Alkhawaldeh sat in business class and waived at Plaintiff Abdallah, who was seated in economy class.

18.     Shortly after they boarded their flight, airline personnel announced a delay in the 9:30 am departure time due to a maintenance issue. At approximately 10:00 am, airline personnel announced an additional delay.

19.     While waiting for the plane to take off, Mr. Abdallah went to use the restroom.

20.     When Mr. Abdallah finished using the restroom, he found a flight attendant standing very close to the restroom door as if she was eavesdropping.

21.     Afterwards, at approximately 10:25 am, airline personnel announced the plane would not be taking off because maintenance personnel needed to check the plane. Airline personnel required all passengers to deplane.

22.     Upon deplaning, Mr. Alkhawaldeh overheard a flight attendant inform one of the passengers that they required passengers to deplane due to security reasons.

23.     Upon information and belief, Defendants' agent(s) falsely reported suspicious behavior by either Mr. Abdallah or Mr. Alkhawaldeh or both, forcing the entire plane to deplane.

24.     While Plaintiffs waited to speak to a gate agent, an FBI agent approached Mr. Alkhawaldeh, told him that he looked familiar, and asked whether he owned a business in Birmingham. Mr. Alkhawaldeh told the agent that he had not seen him before and was visiting for business purposes.

4

25.     The FBI agent approached Mr. Abdallah, told him he looked familiar, and asked him if he tried the barbeque in Birmingham. Mr. Abdallah responded that he had not seen the FBI agent before and that he was visiting for business purposes. Mr. Abdallah stated that this was his first time in Alabama.

26.     At the gate, airline personnel informed passengers they were being transferred to board other American Airlines flights.

27.     Plaintiffs decided to purchase coffee while they waited for their flight. When Plaintiffs left the gate area to purchase coffee, they noticed at least six uniformed officers following them around the airport, with two different uniformed officers monitoring them at each area.

28.     When Plaintiffs returned to the gate area, Mr. Alkhawaldeh took a seat on the floor in front of the gate counter to charge his cell phone. Mr. Abdallah took a seat in a chair further away from the gate counter.

29.     While awaiting flight updates, an FBI agent approached Mr. Alkhawaldeh and requested that he accompany him to a private room to answer questions. Mr. Alkhawaldeh did not want to go to a private room and answer the FBI's questions, because he had done nothing wrong.

30.     When Mr. Alkhawaldeh declined to speak with the FBI agent in a private room to answer questions, the FBI agent informed him that the Defendants' airplane crew reported suspicious activity.

31.     The FBI agent also asked Mr. Alkhawaldeh for his date of birth and his driver's license, which he provided.

32.     The FBI agent then requested Mr. Alkhawaldeh allow TSA to search through his luggage, and Mr. Alkhawaldeh complied. Uniformed officers escorted Mr. Alkhawaldeh to the

TSA security checkpoint where TSA agents searched through his luggage.

33.     The FBI agent and uniformed officers also approached Mr. Abdallah, requested to speak with him, and escorted him to the TSA security checkpoint to search his luggage.

34.     The FBI agent then escorted Mr. Abdallah to a private room where he interrogated him  about his travel to Alabama and asked to provide his identification documents.

35.     During the course of the interrogation, the FBI agent told Plaintiff Abdallah that American Airlines flight attendants had called the police and reported suspicious activity aboard the flight.

36.     The FBI agent told Mr. Abdallah that the flight attendants reported they were uncomfortable flying with Mr. Abdallah and Mr. Alkhawaldeh because a flight attendant reported that Plaintiff Abdallah flushed the toilet two times while in the airplane restroom and that she believed this was suspicious behavior.

37.     After confirming Mr. Abdallah did not pose a security threat, the FBI agent allowed him to leave his gate to board a rescheduled flight.

38.     After existing the private room, TSA agents searched Mr. Abdallah's luggage by scanning it through a machine. At the time of the search, Mr. Abdallah witnessed military officers and canines in his vicinity. Then, TSA agents opened and searched Mr. Abdallah's luggage and shopping bag by hand.

39.     When Mr. Abdallah arrived at the gate for his rescheduled flight, he saw fellow passengers glaring at him, in an intimidating, threatening, and humiliating manner.

40.     Plaintiffs finally boarded a rescheduled flight and took off around 1:00 pm.

41.     Upon information and belief, no airline personnel had observed any suspicious or concerning activity, nor did any airline agent take steps to conduct an objective, fact-based inquiry to ensure that a decision is reasonable and rational and follows company policy.

42.     Instead, airline agents relied on racist, biased, subjective inquiries by airline passengers to determine that Plaintiffs posed security risks.

43.     Upon information and belief, Defendants were well aware of the prevalent stereotypes and sentiments against Muslims, Arabs, Middle Easterners, Egyptians and Jordanians and knew or should have known that they cannot simply remove Middle Eastern passengers without having conducted an objective, fact-based inquiry to ensure that a decision is reasonable and rational and follows company policy.

44.     Defendants singled out Plaintiffs for their Muslim, Arab, Middle Eastern, Egyptian and Jordanian appearances and identities, while other airline passengers who used the restroom prior to take off were not flagged for suspicious behavior. At least one non-Arab, female passenger used the restroom while waiting for the plane to take off, and upon information and belief, that female passenger was not reported for suspicious behavior by Defendants' personnel.

45.     Moreover, after having cleared interrogations and searches, Defendants realized Plaintiffs were not actually threats, yet, Defendants did not re-plane Plaintiffs and other passengers. Instead, Defendants forced Plaintiffs and other passengers to abandon their initial flight and book new flights.

46.     As a result of intentional discrimination based on race and national origin, Plaintiffs Abdallah and Alkhawaldeh suffered from trauma, stigmatization, and severe mental and emotional distress. Defendants publicly humiliated Plaintiffs. As a result of their experience and Defendants' actions, Plaintiffs suffer from anxiety and the fear of flying while Arab and Muslim.

## Claims for Relief

### Count I
### Violation of 42 U.S.C. § 1981

47.     Plaintiffs incorporate the allegations throughout the Complaint.

48.     42 U.S.C. §1981 provides:

> **Equal rights under the law**
> All persons in the jurisdiction of the United States shall have the same right in every state and territory to make and enforce contracts to sue, be parties, give evidence, to a full and equal benefit of all of laws and proceedings for security persons and property as of enjoyed by white citizens, and shall be subject to like punishment, pains, penalty, taxes, license and exactions of every kind, and to no other.

49.     42 U.S.C. § 1981 prohibits intentional racial, ethnic, and ancestry-based discrimination in the making and enforcing of contracts involving both public and private actors.

50.     Defendants violated 42 U.S.C. §1981 by subjecting Plaintiffs to intentional discrimination by singling out Plaintiffs because of their race and national origin and violating their contractual obligations on the basis of their race and national origin.

51.     Plaintiffs are members of a racial and national origin minority groups as Egyptian and Jordanian and members of the Arab, Middle Eastern and Muslim communities.

52.     Plaintiffs have the same civil right to be treated equally in making and enforcing contracts and to be subject to the same punishments, pains, and penalties, as white citizens, and to no other, despite being Arab, Middle Eastern, Egyptian and Jordanian, and Muslim.

53.     Plaintiffs had the right to the performance, benefits, privileges, terms, and conditions of the contracts they entered into.

8

54.     Thus, when Plaintiffs contracted with Defendants American Airlines and Mesa Air Group, commercial air carriers engaged in air transportation services for passage on Flight 5886 from BHM to DFW, as paying passengers and contracting parties, they had the right to be treated equally and free from discrimination.

55.     Defendants violated Plaintiffs' civil rights when they denied them equal treatment in making and enforcing their contracts with Defendants American Airlines and Mesa Air Group. Defendants did not subject them to the same punishments, pains, penalties, and exclusions as white citizens.

56.     Plaintiffs were unable to enjoy the performance, benefits, privileges, terms, and conditions of the contract they entered into with Defendants because they were forced to deplane, followed, interrogated, searched, and significantly delayed in arriving to their destination. As a result of this incident, Plaintiffs do not fly American Airlines anymore out of fear that the same thing might happen again, which has caused them delay, inconvenience, mental anguish, physical and emotional distress, humiliation and embarrassment.

57.     Defendants intentionally and purposefully discriminated against Plaintiffs based on their race and national origin when, by and through their employees and agents, they wrongfully singled out Plaintiffs from their contracted-for flight and had them followed, interrogated, and searched, despite Plaintiffs doing nothing wrong, except for waiving at one another, using the restroom, and flushing the toilet twice.

58.     Defendants fully knew these security concerns were illegitimate, motivated by stereotypes against Muslims, Arabs, Middle Easterners, Egyptians and Jordanians. Defendants nonetheless reported Plaintiffs based on these false safety concerns.

59.     At no point did Plaintiffs engage in any suspicious, loud, rowdy, unruly, inciteful,

or inappropriate behavior and all times relevant hereto, Plaintiffs abided by all rules and regulations of aircrafts and airline security.

60.     No passenger or agent of American Airlines and Mesa Air Group observed any safety concerns from Plaintiffs, except for the fact that Plaintiffs appeared to be Muslim, Arab, Middle Eastern, Egyptian or Arab.

61.     Plaintiffs waved at one another prior to take-off, like many other non-Middle Eastern and non-Muslim travel companions however, no other passenger was singled out, racially profiled, and penalized for doing so and nor were they cause for all passengers to deplane, followed by security, interrogated by FBI agents, and searched the way Plaintiffs were.

62.     Plaintiff Abdallah used the bathroom prior to take-off, like many other non-Middle Eastern and non-Muslim passengers; however, no other passenger was singled out, racially or religiously profiled, or penalized for doing so and nor were they cause for all passengers to deplane, followed by security, interrogated by FBI agents, and searched the way Plaintiffs were.

63.     Plaintiffs were, at all times, in full compliance with American Airlines' rules and policies. Plaintiffs behaved appropriately and respectfully, dressed appropriately, and did not threaten the safety of the flight in any way.

64.     Plaintiffs were, at all times, in full compliance with Defendants' rules and policies. Plaintiffs behaved appropriately and respectfully, dressed appropriately, and did not threaten the safety of the flight in any way.

65.     Defendants had no legitimate reason or justification to remove Plaintiffs from the flight and to deny them their contractual rights except for racial bias and discrimination, thereby making this discrimination intentional and purposeful.

66.     Defendants had a duty to uphold their contractual duties and obligations to

Plaintiffs and not act out of intentional, purposeful discrimination; but instead, Defendants disregarded these duties and acted in an arbitrary and capricious manner in removing Plaintiffs from the flight for no sound purpose.

67.     The FBI agent, while interrogating Plaintiff Abdallah, apologized and confirmed that the Defendants' flight attendants reported they were uncomfortable flying with Plaintiffs because a flight attendant noticed Plaintiff Abdallah flush the toilet two times while in the airplane restroom.

68.     As a result of Defendants' failure to uphold their contractual obligations, violating Plaintiffs' rights under 42 U.S.C. § 1981. Plaintiffs were significantly delayed and forced to board a different flight to complete their travels.

69.     As a result of intentional racial and religious discrimination and denial of equal rights and benefits, Plaintiffs have suffered from stigmatization, mental and emotional distress, damage to their personal and professional reputations, fear and apprehension associated with airports and flying, and immense pressure to look and act a certain way so to camouflage their backgrounds.

70.     Defendants willful, intentional, and unlawful actions violate the laws and regulations of the United States, including, without limitation, 42 U.S.C. § 1981.

71.     WHEREFORE, Plaintiffs request this Honorable Court grant relief in the form described in the Prayer for Relief below, plus all such other relief this Honorable Court deems just and proper, including costs and attorneys' fees incurred in this action.

## Count II
## Violation of Title VI of the Civil Rights Act of 1964

72.     Plaintiffs incorporate the allegations throughout this complaint.

73.     Plaintiffs had the right to participate and enjoy the benefits of federally assisted

programs and not be excluded or discriminated against based on race or national origin pursuant to Title VI of the Civil Rights Act of 1964.

74.      Defendants American Airlines and Mesa Air Group were and are commercial air carriers receiving federal assistance as they operate according to the rules and regulations of the Federal Aviation Agency, the Department of Transportation, and the Department of Homeland Security, and work in compliance with various other federal agencies.

75.      Moreover, Defendants receive federal funds via federal subsidies and therefore are subject to Title VI of the Civil Rights Act of 1964.

76.      Defendant American Airlines received over $82.6 Billion in federal subsidies to date.

77.      Defendant Mesa Air Group received $51.6 Billion in federal subsidies to date.

78.      Plaintiffs were deprived the benefits and participation in and excluded from traveling on their original American Airlines/Mesa flight, in violation of 42 U.S.C. § 2000(d), when they were wrongfully reported for security concerns for waving at one another and because Plaintiff Abdallah using the restroom prior to take off and flushed the toilet twice.

79.      At no point did Plaintiffs engage in any suspicious, loud, rowdy, unruly, inciteful, or inappropriate behavior and all times relevant hereto, Plaintiffs abided by all rules and regulations of aircrafts and airline security.

80.      No passenger or agent of Defendants American Airlines and Mesa Air Group observed any safety concerns from Plaintiffs, except for the fact that Plaintiffs appeared to be Muslim, Arab Middle Eastern, Egyptian and Jordanian.

81.      Plaintiffs waved at one another prior to take-off, like many other non-Middle Eastern and non-Muslim travel companions; however, no other passenger was singled out,

racially profiled, and penalized for doing so and nor were they cause for all passengers to deplane, followed by security, interrogated by FBI agents, and searched the way Plaintiffs were.

82.     Plaintiff Abdallah used the restroom prior to take-off, like many other non-Middle Eastern and non-Muslim passengers; however, no other passenger was singled out, racially profiled, and penalized for doing so and nor were they cause for all passengers to deplane, followed by security, interrogated by FBI agents, and searched the way Plaintiffs were.

83.     Defendants had no legitimate reason or justification to remove Plaintiffs from the flight and to deny them their contractual rights except for racial bias and discrimination; rather, Defendants intentionally and purposefully discriminated against Plaintiffs by removing them from the flight.

84.     Plaintiffs were, at all times, in full compliance with Defendants' rules and policies. Plaintiffs behaved appropriately and respectfully, dressed appropriately, and did not threaten the safety of the flight in any way.

85.     Defendants had a duty to uphold their contractual duties and obligations to Plaintiffs and not act out of intentional, purposeful discrimination; but instead, Defendants disregarded these duties and acted in an arbitrary and capricious manner in removing Plaintiffs from the flight for no sound purpose.

86.     The FBI agent, while interrogating Plaintiff Abdallah, apologized and confirmed that Defendants' flight attendants reported they were uncomfortable flying with Plaintiffs because a flight attendant noticed Plaintiff Abdallah flush the toilet two times while in the airplane restroom.

87.     Only after having cleared such interrogations and searches that Defendants rebooked Plaintiffs for another flight.

88.     Ultimately, because Defendants violated Plaintiffs rights under 42 U.S.C. §

2000(d), Plaintiffs were forced onto a different flight, after a significant delay, to finally complete the travel they had originally planned and purchased.

89.     As a result of Defendants actions, Plaintiffs have suffered from stigmatization, mental and emotional distress, damage to their personal and professional reputations, fear and apprehension associated with airports and flying, and immense pressure to look and act a certain way so to camouflage their backgrounds, including feeling the need to remain quietly seated, and avoid using the restroom aboard aircrafts. They have also been compelled to avoid flying on American Airlines.

90.     WHEREFORE, Plaintiffs request this Honorable Court grant relief in the form described in the Prayer for Relief below, plus all such other relief this Honorable Court deems just and proper, including costs and attorneys' fees incurred in this action.

## Prayer for Relief

WHEREFORE, Plaintiffs request that this Honorable Court enter judgement in favor of Plaintiffs and against Defendants, on each and every county in this Complaint, and enter an Order awarding the following relief:

A. An injunction prohibiting Defendants from discriminating against passengers and customers on the bases of their race or religion;

B. An injunction ordering Defendants to provide racial and religious sensitivity trainings to all employees;

C. Payment for all economic damages, including but not limited to, reimbursement of flight tickets and compensation for the delays;

D. Payment for non-economic damages, including emotional harm;

E. Punitive damages;

F. Statutory damages;

14

G.  An award of attorneys' fees, costs and expenses of all litigation; and,

H.  Any further relief to which Plaintiffs are entitled or that this Honorable Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

Respectfully submitted,

**CAIR LEGAL DEFENSE FUND**

BY: /s/ Lena Masri
Lena F. Masri (VA 93291)
lmasri@cair.com
Gadeir I. Abbas (VA 81161) α ç
gabbas@cair.com
Justin Sadowsky (D.C. 977642) ç
jsadosky@cair.com
Zanah Ghalawanji (MI 977642) ß ç
zghalawanji@cair.com

453 New Jersey Ave., SE
Washington, DC 20003
Phone: (202) 742-6420
Fax: (202) 379-3317

α *Licensed in VA, not D.C. Practice limited to federal matters.*
ß *Licensed in MI, not D.C. Practice limited to federal matters.*
ç *Admission pending.*

Dated: April 13, 2021